## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 3:21−CR−00359−PAD−MEL−1** |
| **Plaintiff,** | |
| **vs.** | |
| **JOSE JULIO RODRIGUEZ-CUMBA,** | |
| **Defendant.** | |
| _____/ | |

**DEFENDANT, JOSE JULIO RODRIGUEZ-CUMBA'S
MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF THE
UNLAWFUL SEARCH OF THE DEFENDANT'S VEHICLE AND THE SEIZURE OF
DEFENDANT'S CELLULAR TELEPHONE AND THE SUBSEQUENT UNLAWFUL
SEARCH THEREOF IN VIOLATION OF THE FOURTH AMENDMENT TO THE
UNITED STATES CONSTITUTION AS WELL AS ALL EVIDENCE
DERIVED THEREFROM
AND
MOTION FOR _FRANKS_ HEARING AND EVIDENTIARY HEARING**

COMES NOW, Defendant, **JOSE JULIO RODRIGUEZ-CUMBA**, by and through his undersigned counsel, and presents herewith his Motion to Suppress All Evidence Obtained as a Result of the Unlawful Search of the Defendant's Vehicle and the Seizure of Defendant's Cellular Telephone and they Subsequent Unlawful Search Thereof in Violation of The Fourth Amendment to the United States Constitution as well as All Evidence Derived Therefrom and Motion for _Franks_ Hearing and Evidentiary Hearing, and states as follows:

### PROCEDURAL BACKGROUND

1.       On September 29, 2021, the Government filed an Indictment, therein charging Defendant, Jose Julio Rodriguez-Cumba, with the following offenses: Count 1 – Conspiracy to Possess with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(l) & (b)(l)(A)(ii), and 846; Count 2 – Possession with Intent to Distribute Controlled Substance, in violation

of 21 U.S.C. §§ 84l(a)(l) and (b)(l)(A)(ii); 18 U.S.C. § 2; <u>Count 3</u> – Possession with Intent to Distribute Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(l) and (b)(l)(D), and <u>Count 4</u> – Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). [D.E. 3]

2.      On October 7, 2021, the Defendant was arraigned and entered his plea of not guilty to all charges in the Indictment. [D.E. 22]

3.      On September 12, 2021, prior to the filing of the Indictment in this cause, Rolando Rojas, Special Agent, HIS, applied for and obtained a search warrant issued by United States Magistrate Judge Marshal D. Morgan, for the search of the Defendant's cellular telephone.

4.      Subsequently, law enforcement conducted a search of the Defendant's cellular telephone and various items of evidence was retrieved therefrom that the Government intends to introduce at the time of trial.

5.      The search of the Defendant's vehicle and the seizure of the cellular telephone from the person of the Defendant was unlawful.  Furthermore, the Search Warrant issued for the search of the Defendant's cellular telephone was the result of a *very serious material intentional misrepresentation* (by omission and commission) contained within the Affidavit/Application that was submitted to the United States Magistrate Judge to obtain said Search Warrant. That Affidavit was executed by Rolando Rojas, Special Agent, HIS, knowingly, willfully, wantonly, and with reckless disregard for the truth, as discussed in-detail below.

6.      At no time did the Defendant, in-person, or through his counsel, give consent to the search of Defendant's vehicle in a manner that was not the product of the unlawful stop of said vehicle, nor was consent given to seize Defendant's cellular telephone, or to search that cellular telephone.

7.     The Defendant seeks to suppress all evidence obtained as a result of the unlawful search of his vehicle and the unlawful seizure of his cellular telephone and the subsequent unlawful search thereof conducted by law enforcement in violation of the Fourth Amendment to the United States Constitution as well as all evidence derived therefrom.

8.     This motion is filed in the utmost of good faith and in the interest of justice.

**EVIDENCE SOUGHT TO BE SUPPRESSED**

9.     The Defendant seeks to suppress any and all evidence obtained as a result of the unlawful stop of the Defendant's vehicle, the subsequent unlawful search of the Defendant's vehicle and the unlawful seizure of Defendant's cellular telephone from his person on September 10, 2021.  As a result of the subsequent unlawful search thereof conducted by law enforcement in violation of the Fourth Amendment to the United States Constitution as well as all evidence derived therefrom.  The evidence sought to be suppressed includes, but is not limited to, the fruits derived from said unlawful searches and seizures.

**DEFENDANT'S STANDING TO CHALLENGE**
**THE UNLAWFUL SEARCH AND SEIZURE OF HIS VEHICLE AND THE SEIZURE OF HIS CELLULAR TELEPHONE AND THE SUBSEQUENT SEARCH THEREOF**

10.     At the time the Defendant's vehicle was stopped by law enforcement, he was in custody and control of said vehicle, and therefore the Defendant has standing to contest the search and seizure of the vehicle.  Further, the subject cellular telephone was the property of and in the possession of the Defendant at the time it was seized by law enforcement from his person.

11.     At all times material hereto, the Defendant had a reasonable expectation of privacy in and about the vehicle that he was operating on September 10, 2021, and therefore has standing to contest the unlawful search and seizure of said vehicle and its contents.

Additionally, the Defendant had a reasonable expectation of privacy in and about the

3

cellular telephone and all contents thereof, therefore the Defendant has standing to contest the unlawful seizure of said cellular telephone and the subsequent search thereof.

## FACTS SUPPORTING THE REQUESTED SUPPRESSION

12. **The facts as set forth in the Homeland Security Investigations Incident Report prepared September 11, 2021.**

> "On September 10, 2021, at approximately *2:00 p.m.*, a traffic stop incident was reported by the Puerto Rico Police Bureau (PRPB) at Road PR-2, Km. 108.3 in the municipality of Isabela, Puerto Rico (PR).  During the incident subject Jose Rodriguez-Cumba was detained during a traffic stop by PRPB as a result of a Puerto Rico Traffic Law 22 violation.  During the incident PRPB K-9 handler Agent E. Vives - Rosa (Badge #33549) and PRPB K-9 "GREEN" (Badge 36201) conducted a vehicle inspection on the exterior of the vehicle described as a 2022 Dodge RAM TRX, Puerto Rico license plate 1083581, and alerted to the scent of narcotics inside of the motor vehicle. Homeland Security Investigations (HSI) Agents responded to the scene. *As a result of free and voluntary Consent to Search signed by Rodriguez - Cumba, the search resulted in the seizure of* a large quantity of United States currency, jewelry, and *one (1) cellphone* as part of an ongoing HSI investigation." (Emphasis supplied.)

13. **The facts as set forth in the Homeland Security Investigations Incident Report (Traffic Stop Seizure Report) prepared September 11, 2021.**

This report notes that the seizure of the Defendant's cellular telephone (Incident Line Item Number 4) occurred on September 10, 2021 at *4:30 p.m.*

14. **The Defendant's Arraignment and Detention Hearing held on October 7, 2021.**

The evidence proffered by the Government during the defendant's Detention Hearing supports the fact that there was no reasonable suspicion or probable cause to detain the defendant on September 10, 2021. During the Defendant's Arraignment and Detention Hearing held on October 7, 2021, the Government stated in-part: (Transcript of Arraignment and Detention Hearing - D.E. 36)  At page 21, lines 13-18, "He is the one, based on *cell phone download that we did on his phone on __September 10__ when we conducted a traffic stop*. We found basically, I'm not going

to say thousands but hundreds and hundreds, dozens of hundred, of messages where he is giving all sort of instructions to everyone in this organization" (Emphasis supplied.) Note, the Search Warrant for the cellular telephone was not issued until ***September 12, 2021***.

At page 24, lines 21-23, the Government states, "We know these 2.2 million dollars belong to Rodriguez Cumba because *in his phone* he was giving instructions to the individuals ..."

At page 31, lines 12-14, the Government states, "I sent them, both of them, copy of my exhibits, *are from the phone of Mr. Rodriguez Cumba* or evidence we collected from his house." (Emphasis supplied.)

At page 31, lines 18-19, the Government states, "Among the *messages we saw*, we saw that he is conducting trips to places that are pretty far away." (Emphasis supplied.)

At page 32, lines 13-17, the Government states, "How do we know this yacht belongs to him? Because it is not under his name. Your Honor, *we have many multiple messages*. Those are some messages where he is giving instructions as to his boat. He sent the picture to other individuals, and he said, "This is mine."" (Emphasis supplied.)

At page 33, lines 22-25, the Government states, "The big chain, the bling bling big one, *there is a video in his cell phone* when someone who is creating this piece is putting the diamonds and he was video recording the process of the making of this piece of jewelry." (Emphasis supplied.)

In pages 35 through 37, the Government makes multiple references to text messages, evidently obtained from the cellular telephone that had been unlawfully seized from the Defendant.

At page 38, the Court inquires of the Government, "… why if this defendant is so dangerous as the Government is arguing, so dangerous that he should not be left on the street; that he should be deprived of his freedom while this case is awaiting trial, *why didn't the Government file a*

*criminal complaint right after the 10th of September, seek an arrest warrant, arrest him and seek his immediate detention? Why wait until now?"* (Emphasis supplied.)

In response to the Court's inquiry, the Government states, "Yes. I have a response. He disappeared on us. *While we were conducting the search warrant, we made a traffic stop in a different town. He was in this TRX RAM 2021. So, he was at the police station. We were basically conducting -- there was a K-9 who alerted positive to the vehicle that he was driving. So, we were in the process of reviewing the vehicle.* He had twenty thousand dollars in cash and luggage. It looked -- and a ticket that he was about to leave the jurisdiction at the time. *So, at the same time we start this search warrant at his house, and he left the police station.* **We could not detain him at this moment because we had not come into the house and at that specific moment when** he left the police station, **we didn't have the evidence to detain him**." (Emphasis supplied.)

At page 39, the Court inquires of the Government, "Okay, so the fact is that this intervention occurred on the 10th of September and the Government did not seek to charge him until the 29th of September when the grand jury returned. The Government decided not to seek a criminal complaint and get him arrested immediately because he posed such a significant danger that he had to be removed from the streets immediately. The Government did not do that, correct?"

At page 40, in response to the Court's inquiry, the Government states, "Your Honor, we had not gone through the phone and *we didn't have all the evidence at the time*. We were reviewing the evidence to make the proper charges and that is something we cannot do lightly." (Emphasis supplied).

15. **The Special Agent's Affidavit in Support of the Application for Search Warrant for the Cellular Telephone states in-part the following:**

At paragraph 11: "Subsequent to a *consent search of **Rodriguez-Cumba's vehicle** …*" (Emphasis supplied.)

At paragraph 16: "The "DEVICE" [Cellular Telephone] is currently in the lawful possession of HSI. They came into the HSI's possession in the following way: *Device seized from*

*Jose Julio Rodriguez-Cumba **during a traffic stop** for violations of Puerto Rico's Traffic Law.*"
(Emphasis supplied.)

## GROUNDS FOR SUPPRESSION

16.     **First,** there was no violation of Puerto Rico Traffic Law 22 and the assertion that there had been a violation of a traffic law was merely a pretext for the stop of the Defendant's vehicle.   Therefore, the initial stop of the vehicle was unlawful and everything that ensued subsequent thereto was unlawful.  Additionally, the officers unreasonably prolonged the stop of the vehicle to effectuate a "dog sniff."

A temporary detention of an individual during a traffic stop by police constitutes a seizure to which the protections of the Fourth Amendment apply. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (first citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

A traffic stop is a "relatively brief encounter" intended to "address the traffic violation that warranted the stop" and may include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States, 575 U.S. 348, 354–55, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).*  Such a stop can be extended where there is reasonable suspicion of further criminal wrongdoing. *United States v. Lee, 317 F.3d 26, 33 (1st Cir. 2003)* (citing *United States v. Velez-Saldana, 252 F.3d 49, 53 (1st Cir. 2001).*  In the case-at-bar, there was no "reasonable suspicion" to extend the traffic stop.

17.     **Second,** law enforcement exceeded their authority by removing the Defendant from his vehicle at the time of the stop, rather than merely giving the Defendant a citation for the *purported* traffic violation.

There is no doubt that "[a]n officer can stop a car *if he sees a driver commit a traffic offense*, even if the stop is an excuse to investigate something else." *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011) (citing *Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)*).  The officer can then order those inside the vehicle to get out. Id. (citing *Maryland v. Wilson*, 519 U.S. 408, 410, 414-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)).  However, in the case-at-bar there was no traffic violation committed by the Defendant, therefore the officer had no authority to order the Defendant out of the vehicle.

18.     **Third,** there clearly was no probable cause to detain or arrest the Defendant at the time of the stop all the way through the time he was permitted to leave the police station after the search of the vehicle was conducted. (See the above: **"*we didn't have the evidence to detain him."*)

19.     **Fourth,** there was no reasonable suspicion that he was involved in a criminal activity at that time of the stop of the vehicle to justify his seizure under *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its prodigy.

The police can stop and briefly detain a person for investigative purposes if the officer has a *reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'* even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ("quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Again, in this case there were no *articulable facts* that would indicate that criminal activity may be afoot, therefore there was *no reasonable suspicion*.

20.     **Fifth,** inasmuch as the stop of the vehicle was unlawful, all fruits of the traffic stop should be suppressed.

Evidence obtained during a search may be tainted by the illegality of an earlier Fourth Amendment violation, to render such evidence inadmissible as "fruit of the poisonous

tree." *See United States v. D'Andrea,* 648 F.3d 1, 6 (1st Cir.2011) (quoting *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)); *see also Werra,* 638 F.3d at 341. "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *Segura v. United States,* 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939)). This rule equally extends to both the direct and the indirect products of unlawful searches and seizures.  *See Wong Sun,* 371 U.S. at 484, 83 S.Ct. 407. "[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." *New York v. Harris,* 495 U.S. 14, 19, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).

22.   **Sixth,** the consent to search the Defendant's vehicle was obtained by law enforcement after the unlawful stop, so therefore the consent to search is forbidden fruit of the unlawful stop and should be suppressed as well.

A defendant's consent to a search may be invalidated if it "bear[s] a sufficiently close relationship to the underlying illegality." *United States v. Delgado-Pérez*, 867 F.3d 244, 256 (1st Cir. 2017). To determine whether there was a sufficient nexus between the illegal act [the unlawful stop of the vehicle in the case-at-bar] and the defendant's consent, this court considers the factors enumerated by the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). *Delgado-Pérez*, 867 F.3d at 257. Those factors are: (1) "temporal proximity" between the illegal act and the consent, (2) "the presence of intervening circumstances," and (3) "the purpose and flagrancy of the official misconduct." *Brown*, 422 U.S. at 603-04, 95 S.Ct. 2254. "And, where, as here, an earlier unlawful search is alleged to have tainted consent that is given

later, we have 'emphasized the importance of determining whether the prior illegality significantly influenced or played a significant role in the subsequent consent.' " *Delgado-Pérez*, 867 F.3d at 257 (quoting *United States v. Cordero-Rosario*, 786 F.3d 64, 76 (1st Cir. 2015).

Therefore, when the consent to search is removed from the picture, the non-consensual rules apply.   Specifically, the automobile exception to the Fourth Amendment's warrant requirement permits officers to "seize and search an automobile prior to obtaining a warrant *where they have probable cause to believe that the automobile contains contraband*." *United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2014) (first citing *Robinson v. Cook,* 706 F.3d 25, 31-32 (1st Cir. 2013); and then citing *Florida v. White,* 526 U.S. 559, 563–64, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999)).  Police have probable cause to search "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696, 116 S.Ct. 1657; *United States v. Azor*, 881 F.3d 1, 8 (1st Cir. 2017). "Probable cause exists when 'the facts and circumstances as to which police have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found.' " Silva, 742 F.3d at 7 (quoting *Robinson*, 706 F.3d at 32). Search of a motor vehicle requires "particular facts indicating that, at the time of search, the vehicle or a container within it carried contraband, evidence of crime, or other seizable matter." *United States v. Infante-Ruiz*, 13 F.3d 498, 502 (1st Cir. 1994).

None of these requirements existed at the time the vehicle was searched by law enforcement; therefore the search was unlawful.

23.   **Seventh,** the seizure of the Defendant's cellular telephone from his person was unlawful and cannot be justified by the (unlawful) stop of the vehicle, nor is it contraband subject to seizure.  Further, even if one assumes that the traffic stop was valid, without conceding such,

there was no lawful basis for the seizure of the Defendant's cellular telephone from his person. (See the above: **"*we didn't have the evidence to detain him.*"**)

The Defendant's cellular telephone was unlawfully seized from his person at the police facility after the search of his vehicle was completed.  This is proven in-part by the fact that the traffic stop was done at *2:00 p.m.* according to the Homeland Security Investigations Incident Report prepared September 11, 2021, however the Homeland Security Investigations Incident Report (Traffic Stop Seizure Report) prepared September 11, 2021 notes that the seizure of the Defendant's cellular telephone (Incident Line Item Number 4) occurred on September 10, 2021 at *4:30 p.m.*

Additionally, the Defendant was speaking with his attorney *via* the cellular telephone before the attorney arrived at the police facility to attend the search of the vehicle.  Therefore, this demonstrates that the cellular telephone was in the possession of the Defendant and had not been seized during the traffic stop.

Further, assuming the Defendant gave consent to search his vehicle, it is clear that he did not give consent to seize and search his cellular telephone from his person.

The defendant requests an evidentiary hearing to address the illegality of the traffic stop and subsequent seizure of the defendant and his property.

While the defendant challenges the legality of the traffic stop and subsequent detention and seizure of the defendant and his property, the defense believes in the alternative that the issuance of the search warrant for the phone was tainted.

24.   **Eighth,** regarding the issuance of the Search Warrant for the cellular telephone, the statement that the cellular telephone was seized from the Defendant **"*during a traffic stop*"** was a *very serious material misrepresentation*, since it misrepresented the legality, or rather the

illegality, of the manner in which the cellular telephone came to be in the possession of law enforcement.  In other words, the seizure of the cellular telephone from the Defendant at the police facility was wholly illegal. ("… *we didn't have the evidence to detain him."*)  Therefore, in issuing the Search Warrant for the cellular telephone, the Court had been purposefully misled by the Special Agent's Affidavit.

The false statement in the Affidavit was necessary to a finding of probable cause for the issuance of the Search Warrant, since the object of the Search Warrant was tainted evidence that had been seized unlawfully.  When mention of the cellular telephone is removed from the Affidavit there is nothing left in the Affidavit to consider in that regard.

Lastly, the issuance of the Search Warrant for the cellular telephone was derivative and a fruit of the unlawful stop of Defendant's vehicle and the subsequent unlawful seizure of the cellphone from the Defendant's person.

25.     Defendants have a right to challenge the truthfulness of statements made in an affidavit supporting an *ex parte* application for a search warrant. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

> W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Franks v. Delaware,* 438 U.S. at 155–56, 98 S.Ct. 2674.

"A district court must grant a *Franks* hearing (1) when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard

for the truth, was included by the affiant in the warrant affidavit, and [(2)] if the allegedly false statement is necessary to the finding of probable cause." *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676.  If the court holds a hearing, and the defendant establishes by a preponderance of the evidence that there was a perjured statement in the affidavit, it must void the warrant and exclude the fruits of the search if the remaining materials do not establish probable cause on their own. *Id.* at 156, 98 S.Ct. at 2676.

In the case-at-bar, there was a *very serious material statement* in the Affidavit that was necessary to the finding of probable cause, to wit: failure to mention the true manner in which the cellular telephone was seized and failure to mention the illegality of the seizure of that cellular telephone.  Further, it is clear that the remaining assertions in the Affidavit do not and cannot establish probable cause on their own.

Therefore, the Defendant respectfully requests this Honorable Court schedule a *Franks* hearing and an evidentiary hearing upon the within motion to suppress.

The Defendant has made a substantial preliminary showing that a materially false statement was in-fact included in the Affidavit by the Special Agent willfully, wantonly, knowingly, intentionally, and with a reckless disregard for the truth, and that the false statement was necessary to the finding of probable cause for the issuance of the search warrant for the Defendant's cellular telephone.

## **<u>CONCLUSION</u>**

Based on the foregoing, the consent to search and all evidence obtained as a result of the unlawful seizure of the Defendant's cellular telephone and the fruits thereof, should be suppressed and excluded by this Honorable Court.

**WHEREFORE**, Defendant, **JOSE JULIO RODRIGUEZ-CUMBA**, respectfully prays

that this Honorable Court enter its order granting the within Motion to Suppress All Evidence Obtained as a Result of the Unlawful Stop and the Unlawful Seizure of Defendant's Cellular Telephone and the Subsequent Unlawful Search Thereof in Violation of The Fourth Amendment to the United States Constitution as well as All Evidence Derived Therefrom.

Additionally, the Defendant respectfully requests this Honorable Court to schedule a *Franks* hearing and an evidentiary hearing upon the within motion to suppress.

Respectfully submitted,

SAAM ZANGENEH, Esq.
SAAM ZANGENEH, P.A.
14 N.E. 1st Avenue, Suite #300
Miami, Florida 33132
Telephone: (305) 441-2333
E-mail:  saam@zangenehlaw.com
(Counsel for Def., *Jose Julio Rodriguez-Cumba.*)

**/s/ Saam Zangeneh**
SAAM ZANGENEH, Esq.
(Florida Bar No. 526721)

**/s/Francisco J. Adams Quesada**
FRANCISCO J. ADAMS QUESADA
USDC-PR 222507
P.O. BOX 361252
SAN JUAN, P.R. 00936-1252
TEL. (787) 598-9543
E-mail: fjadamsquesada@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this 21st day of February, 2022.  I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those

counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

SAAM ZANGENEH, Esq.
SAAM ZANGENEH, P.A.
14 N.E. 1st Avenue, Suite #300
Miami, Florida 33132
Telephone: (305) 441-2333
E-mail:  saam@zangenehlaw.com
(Counsel for Def., *Jose Julio Rodriguez-Cumba.*)
**/s/ Saam Zangeneh**
SAAM ZANGENEH, Esq. (FL Bar No. 526721)

**/s/Francisco J. Adams Quesada**
FRANCISCO J. ADAMS QUESADA
USDC-PR 222507
P.O. BOX 361252
SAN JUAN, P.R. 00936-1252
TEL. (787) 598-9543
E-mail: fjadamsquesada@gmail.com